IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KRISTOPHER KEALOHA,<br><br>Plaintiff,<br><br>vs.<br><br>NOLAN ESPINDA, et al.,<br><br>Defendants. | CIVIL NO. 20-00323 JAO-RT<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR EMERGENCY INJUNCTIVE RELIEF |

**ORDER DENYING PLAINTIFF'S MOTION FOR EMERGENCY  INJUNCTIVE RELIEF**

Plaintiff Kristopher Kealoha ("Plaintiff"), a state pretrial detainee presently in custody at Halawa Correction Facility ("Halawa"), alleges that Defendants are violating his Fifth, Eighth, and Fourteenth Amendment rights and committing state law torts by mistreating him and/or permitting such mistreatment.  Plaintiff requests an order requiring Defendants Nolan Espinda ("Espinda"), Shari Kimoto, Michael Hoffman, and Scott Harrington (collectively, "Administrative Defendants") to (1) transfer him to the Federal Detention Center ("FDC") or another appropriate facility and (2) provide an outside medical examination of head injuries he allegedly sustained on July 9, 2020.  For the following reasons, the Court DENIES Plaintiff's Motion for Emergency Injunctive Relief.

## BACKGROUND

### I.   Factual History

Plaintiff is currently in the special holding unit ("SHU") at Halawa.  Compl. ¶ 16.  He previously served time at Halawa from 1994 to March 4, 2017 and was rearrested for assault on April 17, 2017.  ECF No. 49 at 3.  Although initially held at Oahu Community Correctional Center ("OCCC"), Plaintiff was transferred to Halawa in December 2018 because he was reclassified as "maximum custody" based on accumulated points from his lengthy history in the State's corrections system.  *Id.*  That classification caused him to be housed in the SHU.  *Id.*[1]

On July 9, 2020, at Defendant Joanne White's ("White") direction, Defendant Frank Kepa ("Kepa") prepared Plaintiff to move to a different, less restrictive, module.  ECF No. 49-4 at 1.  When Plaintiff refused,[2] he was written up for refusing a direct order and moved to disciplinary segregation pending a hearing.  *Id.*; ECF No. 49 at 4.  At approximately 12:30 p.m., Plaintiff broke the fire sprinkler head in his new cell, triggering a fire alarm, flooding his cell, and areas of the SHU, and forcing an evacuation of inmates and staff.  ECF Nos. 49-4

---

[1]  Administrative Defendants explain that Plaintiff was originally placed in the special *housing* unit, which is similar to the special *holding* unit but with more privileges, and both are part of the SHU.  ECF No. 49 at 3–4.

[2]  Plaintiff testified that he refused to move because he was in protective custody, which required that he not be placed with the general population.

at 1; 49-25; 49-26.  Just before 1:00 p.m., Plaintiff, wet and in his boxers, was placed in handcuffs behind his back and shackles on his legs and moved to the recreation yard while repairs were made to the sprinkler system and the area cleaned.[3]  ECF Nos. 49-4 at 1; 49 at 4; Compl. ¶ 17.  At the hearing, White testified that inmates are not typically placed in the yard with restraints for recreation, but Plaintiff was not placed there for "rec" and she was concerned about staff safety due to Plaintiff's disruptiveness.

Valerie Buis ("Buis"), a Halawa nurse, assessed Plaintiff in the yard at 1:30 p.m.[4]  ECF No. 49-4 at 1; ECF No. 54 at 2.  Approximately 30 minutes later,

---

[3]  Administrative Defendants explain that White placed Plaintiff in the yard instead of an airconditioned interview room because he was wet and in his boxers.  ECF No. 49 at 4.  White's testimony confirmed this.

[4]  Plaintiff's counsel asserted multiple objections to testimony about the medical care provided to Plaintiff on July 9, 2020, as well as to the admission of related exhibits.  These objections are misguided, as Plaintiff alleges that he was mistreated then denied—and continues to be denied—proper medical care.  Because Plaintiff placed his medical treatment at issue in this litigation, he has waived any privilege he might have regarding his medical records.  *See Maynard v. City of San Jose*, 37 F.3d 1396, 1402 (9th Cir. 1994) (citations omitted); *cf. Morgan v. Doran*, 308 F. App'x 231, 231–32 (9th Cir. 2009) (holding that "medical records could be considered as non-hearsay under Federal Rule of Evidence 803(6)"); *Rose v. Strubeck*, No. CV-04-52-M-LBE, 2006 WL 8442770, at *2 (D. Mont. May 24, 2006), *aff'd sub nom. Rose v. Scott*, 357 F. App'x 77 (9th Cir. 2009) (holding that HIPPA does not preclude disclosure of the plaintiff's medical information and even if a privilege existed, the plaintiff waived it by placing his emotional condition at issue (citations omitted)).  Plaintiff cannot allege inadequate medical care then preclude presentation and/or discussion of his records.  Moreover, the medical records were filed under seal so the public will not have access to them.

Plaintiff fell twice after allegedly passing out.  ECF No. 49-26, ECF No. 55 at 2; ECF No. 58 at 3.  Plaintiff then reported that he suffered heat stroke.  ECF No. 49-26, ECF No. 55 at 2; ECF No. 58 at 3.  Minutes later, Buis evaluated Plaintiff again, along with Muriel Ah Quin ("Ah Quin"), another Halawa nurse, and provided him with water and cooling napkins.  ECF No. 49-4 at 2; ECF No. 55 at 2.  Staff subsequently moved Plaintiff to a shaded area of the yard and replaced his cuffs with belly chains due to his complaints of discomfort.  ECF No. 49-4 at 2; ECF No. 55 at 2; ECF No. 58 at 3.  Ah Quin took Plaintiff's vitals, but did not take his temperature, ECF No. 55 at 2, and testified that taking Plaintiffs' temperature would have resulted in a false reading because he had just consumed water.  Buis and Ah Quin testified that although Plaintiff was sweating profusely when they administered aid, his vitals and condition did not indicate that he suffered a heat stroke.

Lieutenant Henry Hope, Jr. ("Hope") took Plaintiff to an interview room at around 3:02 p.m. and talked to Plaintiff.  ECF No. 49-4 at 2.  Hope testified that he wanted to calm Plaintiff, who was very angry from his experience in the yard, to ensure that Plaintiff would not be destructive when returned to his cell.  At approximately 3:40 p.m., Hope asked Plaintiff if he wished to see a nurse, and he declined.  ECF No. 49-22.  Plaintiff was permitted to shower, and afforded a phone

call, a grievance, and property authorized in administrative segregation. *Id.*

Plaintiff returned to his cell at 4:26 p.m.[5]  ECF No. 49-4 at 2.

Plaintiff's account of the events differs from the evidence presented by the Administrative Defendants.  Plaintiff claims that he passed out from heat exhaustion after three hours in the hot sun without water and that multiple unknown individuals failed to provide aid.[6]  Compl. ¶ 31.  Plaintiff alleges that he suffered severe injuries from his restraints and his fall, during which he hit his head. *Id.* ¶¶ 32–34, 41; ECF No. 4-1 ¶ 25.  According to Plaintiff, he continues to suffer from headaches, slurred speech, confusion and other symptoms consistent with brain injury, but Administrative Defendants have denied his requests for outside evaluation for brain injury and have not provided him with proper medical

---

[5]  Hope testified that, based on his 23 years of experience at Halawa, he disagreed with the decision to place Plaintiff in the recreation yard where there were other rooms available, such as a visiting room, and that plaintiff's placement in the recreation yard violated Halawa procedures.  The Court need not determine for the limited purposes of this Motion whether Administrative Defendants violated policy or acted with deliberate indifference when placing Plaintiff in the recreation yard.

[6]  Yet the chronology Plaintiff presented in his Reply—based on surveillance video—contradicts the allegations in his Complaint.  ECF No. 66 at 2–6.  In fact, Plaintiff was in the sun for an hour, not three hours, before falling, and never sought shelter in the available and increasing shade until staff and nurses escorted him there while treating him.  ECF No. 49-26.

treatment.  Compl. ¶¶ 42–44; ECF No. 4-1 ¶¶ 26–28.  Plaintiff did not testify to

these matters at the evidentiary hearing.[7]

II.     Procedural History

Plaintiff commenced this action on July 21, 2020 against the Administrative

Defendants in their official capacities for prospective injunctive relief and in their

individual capacities for damages.  Compl. ¶¶ 5–12.  Plaintiff also sues Defendants

White, Kepa, Thailand Holani, Jessie Makepa, and Adult Corrections Officer Eric

Binger ("Binger")[8] in their individual capacities for damages.  *Id.* ¶ 14.  He asserts

the following claims:  Count I – injunctive relief; Count II – violation of civil

rights; and Count III – state law tort claims of intentional infliction of emotional

---

[7]  Instead, the bulk of Plaintiff's testimony covered alleged past incidents and
issues that were or are the subject of different lawsuits.  This action concerns the
recreation yard incident and purported deficiencies with medical care.  Plaintiff's
conclusory statements in the Complaint about the Administrative Defendants'
duties and his requests are not claims, *see* Compl. ¶¶ 51, 59–60, and the scope of
this case—as determined by the Complaint—cannot be expanded by Plaintiff's
testimony or counsel's arguments at the preliminary injunction hearing.  Similarly,
Plaintiff's Exhibit D—his handwritten notes of incidents—outlines a series of
allegations not mentioned in the Complaint.  ECF No. 95-2.  The dates of some of
the incidents are not included in the notes, and he filed grievances on others, which
apparently have not yet resolved.  The notes also suggest that other inmates were
treated differently when they broke sprinklers, but that information is not relevant
to *this* Motion.  The Court evaluates this Motion in connection with Plaintiff's
claims *as pled*.

[8]  Although Plaintiff did not identify Binger by his full name in the Complaint, it is
contained in the record.  ECF No. 49-11.

distress, intentional failure to adequately train and supervise, and failure to exercise reasonable care.

As injunctive relief, Plaintiff requests an order:  (1) immediately transferring him to the FDC or other appropriate facility for a pretrial detainee where he will be safe and enjoy the same privileges and opportunities afforded other pretrial detainees and (2) requiring outside medical consultation and examination of his head injuries.  *Id.* ¶¶ 86–87.  Plaintiff also seeks compensatory and punitive damages.  *Id.* ¶¶ 88–89.

Plaintiff filed the present Motion on July 21, 2020.  ECF No. 4.  The Court held an evidentiary hearing on September 11, 2020, at which Plaintiff, Buis, Ah Quin, White, and Hope testified.

## LEGAL STANDARD

To obtain preliminary injunctive relief, a plaintiff must establish:  (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his or her favor; and (4) an injunction is in the public interest.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).  Where, as here, the government is a party, the last two factors merge.  *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

The Ninth Circuit also employs a "sliding scale" approach to preliminary injunctions, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The issuance of a preliminary injunction may be appropriate when there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"; it is "never awarded as of right." *Winter*, 555 U.S. at 22, 24 (citations omitted). "[C]ourts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,'" and should be particularly mindful, in exercising their sound discretion, of the "public consequences in employing the extraordinary remedy of injunction." *Id.* at 24 (citations omitted).

Moreover, mandatory injunctions ordering affirmative action by a defendant, which is what Plaintiff requests here, go "well beyond simply maintaining the status quo . . . [and are] particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979), *as amended*

(1980)).  Mandatory injunctions are "subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party," *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (citation omitted), or "extreme or very serious damage will result." *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011) (citation omitted).  They "are not issued in doubtful cases." *Id.* (citation omitted).  "The court's finding of a strong likelihood that plaintiffs would succeed on the merits of their claims also evidences a conclusion that the law and facts clearly favor plaintiffs, meeting the requirement for issuance of a mandatory preliminary injunction." *Katie A., ex rel. Ludin v. Los Angeles County*, 481 F.3d 1150, 1157 (9th Cir. 2007) (citation omitted).  District courts should exercise caution in issuing injunctive orders and avoid becoming "enmeshed in the minutiae of prison operations." *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994) (quoting *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)).  Where appropriate, courts may exercise their discretion "by giving prison officials time to rectify the situation before issuing an injunction." *Id.* at 847.

DISCUSSION

Plaintiff requests preliminary injunctive relief in the form of a transfer to the FDC or another facility to protect him from Halawa staff and inmates and for outside medical treatment.  He argues, in conclusory fashion, that:  (1) he has a one-hundred percent likelihood of success on the merits; (2) his head injury must

9

be examined as soon as possible to prevent further irreparable harm; and (3) there is a strong likelihood that the alleged abusive conduct will continue and Plaintiff will suffer irreparable harm unless Defendants are restrained.[9]  ECF No. 4-2 at 2–3. Plaintiff contends that it is not burdensome for Defendants to transfer him to the FDC, as it occurred before, and that Defendants would incur no costs if he takes the place of one of the state inmates presently housed at the FDC.  ECF No. 66 at 10–11.

I.    Plaintiff Is Not Entitled to a Transfer

As a preliminary matter, the Court addresses Plaintiff's request for a transfer to the FDC or another facility that ensures his safety.  Plaintiff has not identified any authority permitting such a transfer, and case law establishes that the Court lacks the power to do so.[10]

---

[9]  Neither Plaintiff's three-page memorandum in support of the Motion, nor his Reply, address all of the elements necessary to obtain a preliminary injunction or the legal standards applicable to his underlying claims.  Because it is Plaintiff's burden to prove entitlement to injunctive relief, and he failed to present a prima facie case as to all required elements in the Motion, it should be denied on this basis alone.

[10]  Espinda's voluntary authorization of Plaintiff's transfer to the FDC in a prior lawsuit, *see* Civil No. 16-00486 JMS-KJM, does not support relief here, as the court did not order the transfer.  *See id.*, ECF No. 17 ("Plaintiff's Motion for Order to Show Cause, ECF 16, is DENIED.  The court has not ordered the Hawaii Department of Public Safety to transfer Plaintiff nor granted any other form of relief on Plaintiff's Motion for Preliminary Injunction, ECF 15, at this time. Rather, the parties mutually agreed to Plaintiff's transfer to the FDC-Honolulu." (citation omitted)).

It is well established that "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State . . . [or] in any particular State." *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (footnote omitted).  And courts routinely conclude that they lack the authority to transfer an inmate from one facility to another.  *See*, *e.g.*, *Pitts v. Espinda*, CIV. NO. 15-00483 JMS-KJM, 2018 WL 1403881, at *3 (D. Haw. Mar. 20, 2018) ("Plaintiff has no legal right to be transferred to the FDC, Waiawa, Kulani, or any other prison facility."); *Moore v. Gipson*, Case No. 1:13-cv-01820-DAD-BAM (PC), 2017 WL 2992529, at *3 (E.D. Cal. Apr. 19, 2017) ("[T]he Court does not have the authority to compel Plaintiff's transfer from Corcoran State Prison to Kern Valley State Prison or any other institution."), *adopted by sub nom. Moore v. Casas*, Case No. 1:13-cv-01820-DAD-BAM, 2017 WL 2984353 (E.D. Cal. July 13, 2017); *Mullins v. Wenciker*, No. 1:07-CV-00108 LJO DLB P, 2007 WL 3053320, at *3 (E.D. Cal. Oct. 19, 2007) ("This court has no authority to order that state prison officials transfer prisoners to other facilities."), *adopted by* 2007 WL 4591673 (E.D. Cal. Dec. 28, 2007).

However, some courts outside the Ninth Circuit have determined that district courts may order state officials to transfer state inmates to different facilities in rare and extreme cases.  *See, e.g.*, *Walker v. Lockhart*, 713 F.2d 1378 (8th Cir. 1983); *Streeter v. Hopper*, 618 F.2d 1178 (5th Cir. 1980).  But even those circuits

acknowledge the very limited scope of a court's ability to order transfers.  *See Walker*, 713 F.2d at 1383 ("[T]he administration of prisons is generally not within the province of the courts."); *Streeter*, 618 F.2d at 1181 ("Courts should proceed cautiously in cases of this kind, to prevent courtroom magnification of the general dangers inherent in prison life from precipitating unnecessary judicial interference in the operation of state prisons.").  Indeed, transfer was ordered in *Walker* because "the *undisputed* evidence demonstrate[d] that Walker's continued confinement in the Arkansas prison system w[ould] subject him to an unusually high risk of physical danger."  *Walker*, 713 F.2d at 1383 (emphasis added).  And in *Streeter*, the Fifth Circuit affirmed the district court's order to transfer an inmate because "[t]he evidence relied on by the district court . . . demonstrate[d] plaintiffs' exposure to conditions considerably more dangerous than those normal in prison life."  *Streeter*, 618 F.2d at 1181 (citation omitted).  Such evidence has not been presented here.

Nor has Plaintiff presented any binding authority supporting his transfer.  In his supplemental memorandum, Plaintiff argues that *Farmer v. Brennan* contains dicta that a prisoner may be transferred out of a prison when facing imminent danger of physical harm and that in *United States v. Dade*, 959 F.3d 1136 (9th Cir. 2020), the Ninth Circuit acknowledged a court's authority to order the transfer of a

prisoner under appropriate circumstances.  ECF No. 87 at 1–2.  These cases do not stand for the propositions for which Plaintiff cites them and are inapposite.[11]

Neither concern preliminary injunctive relief and both involve *federal* inmates.  Even if the Ninth Circuit sanctioned transfer in rare and exceptional circumstances, Plaintiff has not identified any warranting a preliminary injunction ordering the Administrative Defendants to transfer him to another state facility.  As earlier noted, Plaintiff testified about a number of incidents that have occurred over the course of years.  Plaintiff's counsel argued that these incidents show a pattern

---

[11] *Farmer*, for example, does not involve a court-ordered transfer of an inmate. Instead, the Court's reference to a transfer pertained to decisions made by federal prison officials, and whether the petitioner would face a continuing threat of physical injury if transferred to another facility.  *See Farmer*, 511 U.S. at 851 ("At oral argument, however, the Deputy Solicitor General informed us that petitioner was no longer in administrative detention, having been placed in the general prison population of a medium-security prison.  He suggested that affirmance was nevertheless proper because 'there is no present threat' that petitioner will be placed in a setting where he would face a 'continuing threat of physical injury,' but this argument turns on facts about the likelihood of a transfer that the District Court is far better placed to evaluate than we are." (citations omitted)).

The *Dade* court addressed the appellant's request for "release on bail pending his appeal of the district court's denial of his motion to vacate his sentence under 28 U.S.C. § 2255."  *Dade*, 959 F.3d at 1137.  The court explained that such a request is "reserved . . . for extraordinary cases" and "the requisite showing would involve 'special circumstances or a high probability of success.'"  *Id.* at 1138 (citations omitted).  The court found that COVID-19 was a special circumstance that "might warrant a change in the conditions of [the appellant's] confinement (including transfer to another facility) if those risks are not being adequately addressed."  *Id.* at 1139 (citations omitted).  But it noted that the issue was not before it.  *See id.*  Thus, *Dade* does not conclude, or even suggest, that a court can order the transfer of an inmate, and most certainly not a state inmate.

of conduct necessitating Plaintiff's transfer. However, Plaintiff failed to prevail on the merits in the cases filed. *See*, *e.g.*, ECF No. 90-1 (entering judgment in favor of the defendants and against Plaintiff and denying his request for transfer to the FDC in *Kealoha v. Dep't of Pub. Safety*, Civ. No. 05-00009 ACK-KSC); *Kealoha v. Frank*, Civil No. 07-00371 DAE-BMK (D. Haw. Oct. 28, 2008) (dismissing case without prejudice); *Kealoha v. Dep't of Pub. Safety*, Civil No. 09-00299 JMS-BMK (D. Haw. Sept. 27, 2010) (dismissing case as case settled following issuance of order granting in part and denying in part motion for judgment on the pleadings); *Kealoha v. Frank*, Civil No. 11-00431 DAE-BMK, ECF No. 6 (Plaintiff voluntarily dismissing case following an order dismissing complaint with leave to amend); *Kealoha v. Espinda*, Civil No. 16-00486 JMS-KJM (D. Haw. Apr. 4, 2018) (granting Plaintiff's request to dismiss case without prejudice that was filed following the parties' agreement to transfer Plaintiff to the FDC and the court's order dismissing complaint in part); *Kealoha v. Cabrera*, Civil No. 17-00570 HG-KSC (D. Haw. Feb. 12, 2018) (dismissing case with prejudice for failure to amend pleadings to state cognizable claim); *Kealoha v. Espinda*, Civil No. 20-00309 JMS-RT, ECF No. 4 (pending motion for emergency injunctive relief). And where Plaintiff points to more recent incidents, the record is undeveloped and incomplete. Thus, Plaintiff has not yet demonstrated that he is subject to conditions more dangerous than those in normal prison life.

In fact, the Administrative Defendants have explained that Plaintiff's extensive prior history in the system caused him to be classified as "maximum custody," which resulted in his transfer from OCCC to Halawa, the only state facility available to house him based on this classification.  ECF No. 49 at 3. Plaintiff does not challenge the classification that requires him to be housed at Halawa, nor can the Court order the Administrative Defendants to transfer him to another state facility.  *See Pitts*, 2018 WL 1403881, at *3 ("Further, because Plaintiff has 'close custody' status, he is ineligible for transfer to Waiawa or Kulani." (citation omitted)).  Accordingly, not only are rare and exceptional circumstances lacking here, even if they existed, there is no other facility that can house Plaintiff.

To the extent Plaintiff requests transfer to the FDC, the Court lacks the authority to do so.  Although the foregoing authority supports the principle that district courts may order state officials to transfer prisoners to another facility in rare and extreme cases, "such a power does not extend to order the state to transfer a prisoner to the federal prison system, or to requir[e] the federal prison system to accept the prisoner."  *Dunbar v. Caruso*, No. 11-10123, 2012 WL 3308407, at *1 (E.D. Mich. Aug. 13, 2012) (citation omitted); *see Moore v. Schuetzle*, 486 F. Supp. 2d 969, 981 (D.N.D. 2007) ("The fact that this Court may arguably have the power in rare and extreme cases to order state officials to transfer a prisoner does

not mean that it has the power and authority to force federal prison officials to

*accept* Moore as a prisoner for service of the remainder of his state sentence."),

*aff'd as modified*, 289 F. App'x 962 (8th Cir. 2008); *Thompson v. Kernan*, No.

1:07-cv-00572-AWI-BAM PC, 2012 WL 3584805, at *1 (E.D. Cal. Aug. 20,

2012) ("*Thompson I*") ("*Walker* does not stand for the proposition that a federal

court may order FBP to accept a state inmate into its custody." (citation omitted)),

*aff'd sub nom. Thompson v. Alvarez*, 586 F. App'x 390 (9th Cir. 2014)

("*Thompson II*").  Indeed, "when a state has primary custodial jurisdiction over an

inmate, a federal court cannot order the delivery of the defendant [to] a federal

institution.  Such an order would be tantamount to a transfer of custody beyond the

jurisdiction of the federal court."  *Fisher v. Goord*, 981 F. Supp. 140, 176

(W.D.N.Y. 1997) (citing *United States v. Warren,* 610 F.2d 680, 684–85 (9th Cir.

1980)); *see Quezada v. Fischer*, No. 9:13-CV-0885 (MAD/TWD), 2014 WL

1289606, at *5 (N.D.N.Y. Mar. 31, 2014) (holding that the "court lacks the

authority to order the placement of a state prisoner into the custody of a federal

agency" and that the state department of corrections determines a prisoner's

housing (citations omitted)); *cf. Warren*, 610 F.2d at 684 (explaining that a court's

"authority to 'correct an illegal sentence' or to 'correct a sentence imposed in an

illegal manner' does not include a general authority to transfer an inmate from state

to federal custody").  And the Court cannot order transfer to the FDC "[e]ven if

Plaintiff's allegations are sufficient to show that he is in imminent danger of bodily harm." *Dunbar*, 2012 WL 3308407, at *1.

Moreover, as conceded by Plaintiff, *see* ECF No. 87 at 3, because the United States, the Federal Bureau of Prisons ("FBP"), and/or the relevant administrators are not parties to this action, the Court could not order the FDC to accept Plaintiff, even if it had the authority to do so.[12]  *See Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983) (An injunction binds only "the parties to the action, their officers, agents, servants, employees, and attorneys, and . . . those persons in active concert or participation with them who receive actual notice of the order." (citation omitted)); Fed. R. Civ. P. 65(d).  Courts must tailor injunctions "to affect only those persons over which it has power." *Zepeda*, 753 F.2d at 727 (citations omitted).  Therefore, in addition to its general lack of authority to transfer Plaintiff to the FDC, the Court is without the power to issue an injunction that would in part be directed at the United States, FBP, or administrators, who are non-parties.  *See Thompson II*, 586 F. App'x at 390 ("The district court did not abuse its discretion

---

[12]  Plaintiff concedes that the Court cannot compel the FDC Warden to accept him because she is not a defendant and even if she were, the Court probably lacks the authority to do so.  ECF No. 87 at 3.  Yet at the hearing, Plaintiff's counsel insisted that the Court can order Plaintiff's transfer to the FDC because Espinda has the ability to send inmates there.  That Espinda may coordinate the transfer of inmates to the FDC under certain circumstances does not confer the Court with the authority to do so.  *See* Hawaiʻi Revised Statutes § 353-16 ("The director may effect the transfer of a committed felon to any federal correctional institution for imprisonment, subsistence, care, and proper employment of such a felon.").

in denying Thompson's motion for preliminary injunction to transfer him into federal custody because the district court lacked authority to issue an injunction directed at a non-party." (citations omitted)).

For these reasons, the Court DENIES Plaintiff's request for a preliminary injunction ordering his transfer to another facility.  *See Pitts*, 2018 WL 1403881, at *3 ("[B]ecause Plaintiff would not be entitled to a transfer to another prison facility even if he prevails on his underlying claims, the court lacks authority to issue a preliminary injunction ordering a transfer." (citation omitted)).

II.     Plaintiff Has Not Demonstrated Entitlement to Outside Medical Care

The remaining issue is whether Plaintiff is entitled to outside medical care.[13] The Court finds that he is not.

A.     Strong Likelihood of Success on the Merits/Serious Questions Going to the Merits

Plaintiff fails to discuss the merits and therefore has not established that there is a strong likelihood of success on, or serious questions going to, the merits. Plaintiff's 42 U.S.C. § 1983 claim is predicated in part upon a violation of the Eighth Amendment's proscription against cruel and unusual punishment.

---

[13] Plaintiff's allegations are insufficiently pled so the scope and nature of his claims are unclear.  He groups his constitutional claims under a single count comprising a few paragraphs generally alleging that Defendants violated his Fifth, Fourteenth, and Eighth Amendment rights.  Compl. ¶¶ 65–67.  The Court will not attempt to construe these allegations to state specific claims, particularly in the context of this Motion.

However, the Due Process Clause of the Fourteenth Amendment, not the Eighth

Amendment, applies to pretrial detainee claims.  *See Castro v. County of Los*

*Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (citation omitted).

Constitutional claims alleging violations of the right to adequate medical

care "must be evaluated under an objective deliberate indifference standard."

*Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) (citation

omitted).  The elements of a medical care claim are:

> (i) the defendant made an intentional decision with respect to the
> conditions under which the plaintiff was confined; (ii) those
> conditions put the plaintiff at substantial risk of suffering serious
> harm; (iii) the defendant did not take reasonable available
> measures to abate that risk, even though a reasonable official in
> the circumstances would have appreciated the high degree of risk
> involved—making the consequences of the defendant's conduct
> obvious; and (iv) by not taking such measures, the defendant
> caused the plaintiff's injuries.

*Id.* at 1125.  The third element requires the defendant's conduct to be objectively

unreasonable, which turns on the facts and circumstances of each case.  *See id.*

(citation omitted).  An individual is not deprived of life, liberty, or property under

the Fourteenth Amendment based on a "mere lack of due care by a state official."

*Id.* (citation omitted).  Consequently, a plaintiff "must 'prove more than negligence

but less than subjective intent—something akin to reckless disregard.'"  *Id.*

(footnote and citation omitted).  Unlike the subjective standard applicable to

Eighth Amendment claims, which requires an official to "know[] of and

disregard[] an excessive risk to inmate health or safety," this standard dispenses of the need to prove "subjective elements about the officer's actual awareness of the level of risk." *Id.* n.4. (citations omitted).

Plaintiff's limited allegations are premised on Defendants' failure to provide him with adequate medical care for his alleged head injury. Plaintiff provides no evidence, other than conclusory allegations, that Defendants have acted or are acting with deliberate indifference to his health. Plaintiff merely alleges that Halawa lacks adequate medical facilities to determine the extent of his injuries sustained from his fall in the rec yard and that his requests for examination by an outside physician have been repeatedly denied. Compl. ¶¶ 53–54; ECF No. 4-1 ¶¶ 26–27. However, the evidence before the Court reveals that Plaintiff declined additional medical care following the incident and claimed to be fine.

Even assuming Plaintiff asked for outside medical care, "[a] difference of opinion between a physician and the prisoner . . . concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citation omitted), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Moreover, Plaintiff has no constitutional right to outside medical care. *See Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care

provided by the prison staff within the institution." (citation omitted)).  Based on the foregoing and the sparse record before the Court, Plaintiff fails to show a likelihood of success on, or raise serious questions going to, the merits of his Fourteenth Amendment claim.  Because Plaintiff has not satisfied the first element for obtaining preliminary injunctive relief, he is not entitled to relief and the Court need not address the remaining elements.  *See Winter*, 555 U.S. at 23–24.

## CONCLUSION

For the reasons stated herein, the Court HEREBY DENIES Plaintiff's Motion for Emergency Injunctive Relief.  ECF No. 4.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, September 18, 2020.



Jill A. Otake
United States District Judge

CIVIL NO. 20-00323 JAO-RT; *Kealoha v. Espinda, et al.*; ORDER DENYING PLAINTIFF'S MOTION FOR EMERGENCY INJUNCTIVE RELIEF